IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ENEDINA ALVAREZ                 *

      Plaintiff           *

  vs.                           * CIVIL ACTION NO. MJG-17-1010

JOSE CARMEN MAGANA ALVAREZ      *

      Defendant           *

\*    \*    \*    \*    \*    \*    \*    \*    \*

<u>MEMORANDUM AND ORDER RE: COMITY</u>

The Court has before it Petitioner's Motion in Limine With Incorporated Memorandum of Law Requesting Order According Comity to Mexico Hague Convention Proceedings [ECF No. 26] and the materials submitted relating thereto. The Court finds that a hearing is unnecessary.

I. <u>PROCEDURAL BACKGROUND</u>

Petitioner, Enedina Alvarez (the "Petitioner" or "Mother"), filed her Verified Petition for Return of the Children to Mexico and Issuance of Show Cause Order [ECF No. 1] ("Petition for Return")[1] on April 12, 2017 together with a Request for Expedited Consideration of Petition for Return of Children to Mexico and Issuance of Show Cause Order [ECF No. 2]. On April 13, 2017,

---

[1] Pursuant to The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 <u>et</u> <u>seq.</u> (the "Hague Convention").

1

the Court issued an Order Requiring Respondent to Appear [ECF No. 6], which ordered Respondent, Jose Carmen Magana Alvarez (the "Respondent" or "Father") to appear for an initial hearing on April 27, 2017, and <u>inter alia</u>, to confirm that the children are physically located within the jurisdiction of the Court and to bring the children's passports and other travel documents for placement in the custody of the Court.

On April 20, 2017, this Court held a telephone conference with counsel for the parties. At that time, an evidentiary hearing was scheduled to be held on May 30, 2017, and the Court referred the case to a Magistrate Judge for confidential mediation[2] proceedings. Initial Scheduling Order, ECF No. 13. The Mother filed an Amended Verified Petition for Return of the Children to Mexico [ECF No. 11] on April 20, 2017, which added a request that this Court recognize and accord comity to the Mexico trial court's decision and the Mexico appellate court's decision.[3]

---

[2] A telephone conference regarding settlement was held on April 28, 2017, and a settlement conference is scheduled for 10:00 a.m. on Friday, May 26, 2017.

[3] These decisions were issued in relation to the Father's Hague Convention Petition for Return filed in Mexico against the Mother while the children were living with the Mother in Mexico. The appellate decision affirmed a lower Mexico court order finding that the Mother had not wrongfully retained the children in Mexico, and that the Father had consented for the children to live in Mexico with the Mother.

On April 26, 2017, the Court issued an Agreed Scheduling Order [ECF No. 16] based upon the parties' Consent Scheduling Order [ECF No. 15]. It stated, in part:

> 1. Petitioner, Enedina Alvarez (the "Petitioner"), and Respondent, Jose Carmen Magana Alvarez (the "Respondent") are prohibited from removing the minor children, M.K.A., born in 2013, and A.S.A., born in 2015 (collectively the "minor children"), or causing the minor children, to be removed from this Court's jurisdiction pending final disposition of the Petitioner's Amended Verified Petition for Return of Children to Mexico (Doc. No. 11) ("Petition for Return").
>
> 2. Respondent promptly shall deliver the minor children's passports and travel documents to the Clerk of the Court to be held subject to further Order.
>
> 3. Petitioner and Respondent shall appear before this Court on the 30th day of May, 2017 at 10:00 a.m. in Courtroom 5C of the United States District Court for the District of Maryland, 101 W. Lombard Street, Baltimore, Maryland 21201, for an evidentiary hearing on the merits of the Petition for Return.

Agreed Scheduling Order 1-2, ECF No. 16.[4] As a result of the parties' agreement, the Initial Hearing scheduled for April 27, 2017 was cancelled.

With her Petition for Return, the Mother included a copy of a Custody Agreement [ECF No. 1-1] dated January 6, 2016 and a

---

[4] The children's passports were surrendered to the Clerk of the Court on May 26, 2017. See ECF Nos. 33, 34.

3

copy of the Mexico Appellate Court Decision [ECF No. 1-2] issued September 7, 2016.[5] The Father filed his Answer [ECF No. 21] on May 10, 2017, denying that the Mother had legal custody over the children and denying that the children had been wrongfully removed from Mexico. Answer ¶¶ 35-39, ECF No. 21. In his Answer, the Father did not specifically respond to each of the Mother's allegations nor did he include any response regarding the Mexico Appellate Court Decision.

By the current Motion in Limine, the Mother requests this Court to accord comity to the Mexico Hague Convention Proceedings.

II. DISCUSSION

A. The Hague Convention[6]

"[T]he primary purpose of the Hague Convention is to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court." Miller v. Miller, 240 F.3d 392, 398 (4th Cir. 2001) (citation omitted). The Hague Convention does not address the underlying custody issues but rather the jurisdiction under which the

---

[5] Both copies were translated from Spanish to English.
[6] The United States ratified the Hague Convention in 1988, and Mexico ratified it in 1991. Padilla v. Troxell, 850 F.3d 168, 178 n.5 (4th Cir. 2017). Congress implemented the Hague Convention in 1988 through the International Child Abduction Remedies Act ("ICARA"). 22 U.S.C. §§ 9001-9011.

4

custody issues will be decided. Id.; see also Holder v. Holder, 392 F.3d 1009, 1013 (9th Cir. 2004) "The Convention's focus is thus whether a child should be returned to a country for custody proceedings and not what the outcome of those proceedings should be.").

Therefore, "the scope of a court's inquiry under the Hague Convention is limited to the merits of the abduction claim." Miller, 240 F.3d at 398 (citation omitted). The Convention attempts to remove the motivation for wrongful removals or retention by requiring the country to which a child has been removed or retained to return the child to his or her country of habitual residence, absent the establishment of certain defenses or exceptions. Asvesta v. Petroutsas, 580 F.3d 1000, 1004 (9th Cir. 2009). Accordingly, the initial question before the court is whether the child was "wrongfully removed or retained within the meaning of the Convention." Miller, 240 F.3d at 398 (citation omitted).

"Under Article 3, the removal or retention of a child is wrongful when it breaches a person's rights of custody 'under the law of the State in which the child was habitually resident.'" Smedley v. Smedley, 772 F.3d 184, 186 (4th Cir. 2014)(quoting Hague Convention Art. 3). In the instant case, the Mother must prove, by a preponderance of the evidence, that

(1) the children were "habitually resident" in Mexico at the time of removal to the United States; (2) the removal by the Father was in breach of the Mother's custody rights under Mexico law; and (3) the Mother had been exercising her custody rights at the time of removal. See Miller, 240 F.3d at 398. Because the Hague Convention does not define "habitual residence," United States federal courts determine it by the particular facts in each case. Id. Courts will look at whether the parents shared the intention to make a particular country the child's home, and whether sufficient time has passed for the child to acclimatize to the residence. Id.; see also Maxwell v. Maxwell, 588 F.3d 245, 251 (4th Cir. 2009)(describing a two-part framework to assist in the habitual residence analysis).

"Once a petitioner has shown a wrongful removal occurred, the burden shifts to the respondent to establish that one of the exceptions in the Convention 'excuses return' of the child." Padilla v. Troxell, 850 F.3d 168, 175 (4th Cir. 2017)(quoting Lozano v. Montoya Alvarez, --- U.S. ----, 134 S. Ct. 1224, 1229 (2014)). "Article 13 excuses return where, for example, the left-behind parent was not 'actually exercising' custody rights when the abducting parent removed the child, or where there is a 'grave risk' that return would 'place the child in an

intolerable situation.'" Lozano, 134 S. Ct. 1229 (quoting Hague
Convention, Arts. 13(a)-(b)).

B. International Comity and the Hague Convention

The Fourth Circuit has noted that "though foreign judgments are not entitled to full faith and credit, comity is at the heart of the Hague Convention." Smedley, 772 F.3d at 189 (quoting Miller, 240 F.3d at 400). The United States Supreme Court provides a description of comity with some guiding principles:

> No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call "the comity of nations." . . . .
>
> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.
>
> . . . .

> [W]here there has been opportunity for a
> full and fair trial abroad before a court of
> competent jurisdiction, conducting the trial
> upon regular proceedings, after due citation
> or voluntary appearance of the defendant,
> and under a system of jurisprudence likely
> to secure an impartial administration of
> justice between the citizens of its own
> country and those of other countries, and
> there is nothing to show either prejudice in
> the court, or in the system of laws under
> which it was sitting, or fraud in procuring
> the judgment, or any other special reason
> why the comity of this nation should not
> allow it full effect, the merits of the case
> should not, in an action brought in this
> country upon the judgment, be tried afresh,
> as on a new trial or an appeal, upon the
> mere assertion of the party that the
> judgment was erroneous in law or in fact.
> The defendants, therefore, cannot be
> permitted, upon that general ground, to
> contest the validity or the effect of the
> judgment sued on.

Hilton v. Guyot, 159 U.S. 113, 163-64, 202-03 (1895).

Where comity is at issue, a court begins its analysis "with an inclination to accord deference to" a foreign court's decision of a related Hague petition. Diorinou v. Mezitis, 237 F.3d 133, 145 (2d Cir. 2001). However, a court may decline to extend comity if the foreign court "clearly misinterprets the Hague Convention, contravenes the Convention's fundamental premises or objectives, or fails to meet a minimum standard of reasonableness." Smedley, 772 F.3d at 189 (quoting Asvesta, 580 F.3d at 1014). In Smedley, the Fourth Circuit found that the district court had properly found the foreign court's decision

was "at least minimally reasonable,"[7] which was sufficient to accord comity. Id. at 191.

### C. The Mexico Hague Convention Proceedings

The Court initially[8] had access only to the Mexico Appellate Court Decision [ECF No. 1-2], which was attached to the Petition for Return. The decision, however, which affirms the lower court finding, details the facts considered and the law applied. There is nothing in the decision that would indicate that the court either misinterpreted the Hague Convention or was inconsistent with its fundamental premises and objectives. The Mexico courts found that the Father had consented to the children remaining in Mexico. Such a finding is supported by the evidence, such as the custody agreement.

The Father notes that the custody agreement was intended to be temporary and did not entitle the Mother to keep the children in Mexico past the January 11, 2016 scheduled return to the United States. The Mexico court, however, considered this argument in its decision. The Mexico court determined that the

---

[7] Finding that it was not necessary for the foreign court to have made a specific determination of the child's habitual residence because the respondent had consented to the residence. Smedley, 772 F.3d at 189-90.

[8] It appears that Respondent attached a translation from the trial court proceedings to his response. See Ex. A, ECF No. 31-1.

vacation circumstances had radically changed due to an episode of violence between the Father and the Mother. The Mexico court further noted that since the Custody Agreement was signed on January 6, 2016, and the parties had full knowledge of the scheduled return date, if it was intended to end on that date, they had the opportunity to so specify but did not.

Further, as noted by the Mother in her motion, the Mexico trial court appointed a guardian ad litem for the children, ordered psychological evaluations for the parties, and received extensive testimony and evidence, including documents and affidavits. After considering all of the evidence, the Mexico trial court found that the Mother did not wrongfully retain the children in Mexico, and this finding was upheld after further extensive analysis by the Mexico appellate court. The finding is certainly at least minimally reasonable.

Accordingly, this Court shall accord comity to the Mexico Hague Convention Proceedings.

### D. Petition for Return

The Court's deference to the Mexico Hague rulings that the Mother did not wrongfully retain the children in Mexico does not end the Court's consideration of whether the Father's removal of the children from Mexico requires an order for their return.

Rather, the Court shall take into account the reasons for the Mexico courts' decisions when deciding the instant Petition for Return. There remains other evidence to be considered, including the circumstances surrounding the Father's removal of the children from Mexico, and the Convention's defenses and exceptions. The Court shall consider all material evidence to be presented at the hearing on Tuesday, May 30, 2017 prior to making an ultimate finding on the Petition for Return.

    E.    <u>Pending Motion for Expedited Consideration</u>

Finally, there remains pending the Petitioner's Request for Expedited Consideration of Petition for Return of Children to Mexico and Issuance of Show Cause Order [ECF No. 2]. Given the parties agreed scheduling order and cancellation of the show cause hearing, it appears this motion is now moot and shall be denied as moot. The Court shall continue to take all appropriate measures to expedite resolution of this case.

III. <u>CONCLUSION</u>

    For the foregoing reasons:

        1.    Petitioner's Motion in Limine With Incorporated Memorandum of Law Requesting Order According Comity to Mexico Hague Convention Proceedings [ECF No. 26] is GRANTED.

2. Petitioner's Request for Expedited Consideration of Petition for Return of Children to Mexico and Issuance of Show Cause Order [ECF No. 2] is DENIED AS MOOT.

SO ORDERED, this Friday, May 26, 2017.

/s/
Marvin J. Garbis
United States District Judge